# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICK DINO ROSSI, | CIVIL ACTION NO. 3:09-CV-0179 |
| Plaintiff, | |
| v. | (JUDGE CAPUTO) |
| WYOMING VALLEY HEALTH CARE SYSTEM, | |
| Defendant. | |

## MEMORANDUM

Presently before the Court is Defendant's Motion for Summary Judgment. (Doc. 16.) For the reasons provided below, Defendant's motion will be granted.

## BACKGROUND

Plaintiff Patrick Rossi was born on April 14, 1962. (Rossi Dep.10:24, March 24, 2010.) Rossi, his parents, and his maternal grandparents were all born in the United States; his paternal grandparents were born in Italy. (Rossi Dep. 42:3-11, 44:4-45:5.) Rossi began working for Defendant Wyoming Valley Health Care System ("Wyoming Valley") as a courier in August 1995. (Rossi Dep. 49:9-16.) In April 1997, Rossi was promoted to the position of security officer. (Rossi Dep. 50:3-15.) Rossi worked the third shift, from 11:00 P.M. to 7:00 A.M.; at the beginning of each shift, Rossi was required to swipe in using an ID card or tell his immediate supervisor, Dave Whipple, if he forgot to swipe in. (Rossi Dep. 73:24-25, 77-8-14.) During each shift, Plaintiff was required to complete a security log that detailed his activity and the time those activities occurred during the night. (Rossi Dep. 78:20-79:24.) A log was required by security officers at the end of each shift, and Rossi had been warned

that failure to complete a log could result in termination of his employment. (Rossi Dep. 83:6-12.) During his employment with Wyoming Valley, Plaintiff was issued three warnings regarding unscheduled absences from his employment; the latest of these warning came on November 16, 2005. (Doc. 18, Ex. A.)

On December 4, 2005, Rossi was late for his shift; he called and alerted other security officers, but did not inform Whipple or director of security, Jim Richards. (Rossi Dep. 91:7-92:21.) On his log for that night, Plaintiff wrote that he had begun his shift at 10:50 P.M.; however, Plaintiff admits that he did not begin his shift at that time, and an employer review of the security tape from that night showed Plaintiff arriving at 11:28 P.M. (Rossi Dep. 105:3-5,106:20-24, 116:6-7.) Whipple, having discovered that Rossi had failed to swipe in on December 4, 2005, reviewed the surveillance footage and discovered the discrepancy. (Doc. 20 at ¶ 8-10.)

Subsequently, Whipple and Richards brought the incident to the attention of Len Paczkowski in the Human Resources Department. (Doc. 20 at ¶ 15.) On December 8, 2005, Plaintiff was called into a meeting with Richards, Whipple and Paczkowski. (Rossi Dep. 109:3-16.) At that meeting, Rossi's termination was recommended for violating Wyoming Valley Health Care System Policy 60.6. That policy covers the protocol for disciplinary action and involuntary termination of employment. (Doc. 19, Ex. I.) Policy 60.6 provides guidelines for escalating punishments depending on the severity of the infraction; the most serious infractions are Group IV, for which the suggested disciplinary action on the first occurrence is termination. (Doc. 19, Ex. I.) Among the violations listed in Group IV is "[f]alsification of any record." (Doc. 19, Ex. I.) Plaintiff's termination was based on his falsification of his security log, which Defendant contends is a record.

2

Claiming that the problem was simply a matter of "human error," Plaintiff sought to appeal his termination. (Doc. 18, Ex. A.) Richards wrote a letter to Wyoming Valley's Vice President of Administrative Services, Joseph McDonald, stating that Richards trusted Rossi and believed he had made an honest mistake. (Doc. 19, Ex. D.) In that letter, Richards explained that Rossi was "a reliable, dependable, take charge officer who has a good knowledge of his Job Responsibilities." (Doc. 19, Ex. D.) On December 21, 2005, McDonald decided to uphold the termination after "extensive review and consideration of [Rossi's] problem resolution procedure." (Doc. 19, Ex. A.)

According to Rossi, Whipple regularly made derogatory comments regarding Italians in the presence of Rossi and other security officers. Whipple, who was going through a divorce, would regularly make comments about his wives and their families, using terms such as "guinea," "wops," and "mafioso." (Rossi Dep. 182:5-7, 184:13-14, 200:22.) Among the statements reportedly made by Whipple, were that "[t]here's only one good Italian, a dead Italian" and that "all wops are no good." (Rossi Dep. 184:22-23, 200:22-23.) However, Rossi testified that he was not sure whether Whipple knew of Rossi's Italian ancestry. (Rossi Dep. 202:4-8.) While these comments were not directed at Rossi, Plaintiff testified that they were directed at him because he is "an Italian path." (Rossi Dep. 201:8-9.) Rossi also testified that Richards discriminated against him by making a face during their meeting with Whipple and Paczkowski and made a gesture where Richards "took his two palms, spread them out and shook them back and forth," which Plaintiff termed "the Italian dig." (Rossi Dep. 211:1-212:25.) Rossi further stated that Whipple discriminated against him because of his age due to a comment where Whipple said "you're getting old, buddy, you can't take it no more." (Rossi Dep. 236:12-13.)

3

To bolster his claims that he had been discriminated against on the basis of his Italian heritage, Rossi offered into evidence several unsworn statements from current and former security officers with Wyoming Valley. One of these officers, Sean O'Leary, had his employment terminated in early December 2005 for falsifying his security log in a situation similar to Rossi's; at the time of his termination, O'Leary was twenty-nine (29) years old and has not identified himself as being of Italian descent. (Doc. 20 at ¶¶ 3-7; Doc. 19 at ¶¶ 15-16.) Most of the statements recount examples of Whipple making derogatory comments regarding Italians, and include some examples of animosity toward Rossi individually. The statements also recount an incident where Richards, in response to a report that an African-American patient punched a security officer, stated that he "would have punched that nigger right in the face." (Doc. 28, Ex. A-D.) These documents also claim that Rossi had contacted second shift security officers to cover for his tardiness on December 4, 2005; according to the statements, this was a common occurrence amongst security officers at Wyoming Valley and had, in fact, been encouraged by Whipple in an effort to cut down on overtime pay. (Doc. 28, Ex. C.)

On January 28, 2009, Plaintiff filed his Complaint alleging that Wyoming Valley had violated Title VII and the Pennsylvania Human Relations Act ("PHRA") by discriminating against him because of his ancestry and national origin (Counts I and II) and the Age Discrimination in Employment Act ("ADEA") and PHRA by discriminating against Rossi due to his age. On May 11, 2010, Defendant filed the instant Motion for Summary Judgment. This motion has been fully briefed and is currently ripe for disposition.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure

4

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to

refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## **DISCUSSION**

**I.      Counts I and II**

Plaintiff claims that Defendants terminated his employment in violation of Title VII and the PHRA. Both Title VII and the PHRA make it unlawful for an employer to discharge an employee on the basis of that employee's race, color, or national origin. See 42 U.S.C. § 2000e-2(a)(1); 43 P.S. § 955(a). The legal analysis is identical for both statutes.[1] *Burgh v.*

---

1

Although it appears nowhere in the briefs or the substantive causes of action, Plaintiff recites 42 U.S.C. § 1981 as one of the statutes violated by Defendant in his Complaint's "preliminary statement." That statute states in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no others.

42 U.S.C. § 1981(a).

To establish a claim under § 1981, a plaintiff must establish: (1) that he is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute. *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 797 (3d Cir. 2001).

It is unclear from Plaintiff's Complaint and the record as a whole which of the enumerated § 1981 activities he is alleging is the source of discrimination. Nor has he attempted to prove he is a member of a racial minority. There is no contract that he was prevented from making or enforcing, he is not being prevented from suing, being a party or giving evidence, nor is he being denied equal

6

*Borough Council of Borough of Montrose*, 251 F.3d 465, 469 (3d Cir. 2001). Because "ancestry" is not one of the enumerated categories protected by Title VII, this Court will treat the "ancestry discrimination" claim as one for national origin discrimination.

The familiar *McDonnell Douglas* burden shifting analysis applies to Plaintiff's claims of employment discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this analysis, Plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). If he satisfies this burden, the burden shifts to Defendant to articulate some legitimate, nondiscriminatory reason for terminating Rossi. *McDonnell Douglas*, 411 U.S. at 802. If Defendant can meet this burden, the presumption of discriminatory action raised by the *prima facie* case is rebutted. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981). To survive summary judgment, Rossi then must present evidence that Defendant's proffered reason was merely a pretext for discrimination and not the real motivation for his termination. *Id.* at 253.

**A.  Prima Facie Case**

In order to make out a prima facie case for employment discrimination, the Plaintiff must prove that 1) he was a member of a protected class, 2) he was qualified for the position, 3) he was subjected to an adverse employment decision, and 4) circumstances that give rise to an inference of unlawful discrimination. *Waldron v. SL Industries, Inc.*, 56 F.3d 491, 494 (3d Cir. 1995) (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

---

benefit of any law. As such, there is no evidence of discrimination regarding any of the enumerated § 1981 activities by Defendant, and, therefore, summary judgment will be granted on these claims.

Plaintiff has shown that he belonged to a protected class due to his national origin claim. He was qualified for the position of security guard, which he had performed for almost a decade. He was terminated, which qualifies as an adverse employment decision. Finally, he has a raised a genuine issue of material fact showing circumstances that would give rise to an inference of discrimination, namely the vitriol that Whipple supposedly harbored towards Italians. As such, Plaintiff has brought forth sufficient evidence to make out a prima facie case for national origin discrimination.

### B. Legitimate Non-Discriminatory Reason

Having met the burden to prove a prima facie case, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for the adverse employment decision. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). An adequate, nondiscriminatory reason for the adverse action taken against Plaintiff serves to "dispel[] the inference of discrimination arising from Plaintiff's initial evidence." *Keller*, 896 F.2d at 797. To satisfy its burden, Defendant need not prove that the articulated reasons actually motivated its conduct. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). Rather, Defendant must only introduce "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason" for the adverse employment action. *Id.* If, however, Defendant fails to satisfy this minimal burden of production, the Court must deny Defendant's motion in favor of Plaintiff. *Keller*, 130 F.3d at 1108.

Defendant has met its burden to produce a legitimate, non-discriminatory reason for Rossi's termination. Namely, by falsifying his security log, Rossi committed a violation that called for immediate termination pursuant Wyoming Valley's disciplinary guidelines.

8

Therefore, Defendant has satisfied the second prong of the burden-shifting test.

### C. Pretext

Following Defendant's production of its non-discriminatory reason for terminating Plaintiff's employment, Rossi then bears the burden of demonstrating that the alleged legitimate, nondiscriminatory reasons advanced by Defendant are but a pretext, aimed at concealing Defendant's discriminatory motives. *Ezold*, 983 F.2d at 522 (citing *Burdine*, 450 U.S. at 257). To survive a summary judgment motion, Plaintiff must present "some evidence, direct or circumstantial, from which a factfinder could reasonably either: (1) disbelieve [Defendant's] articulated reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [Defendant's] action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). If Plaintiff successfully points to evidence sufficient to discredit Defendant's tendered reasons, Plaintiff need not submit additional evidence beyond the initial prima facie case in order to survive summary judgment. *Waldron v. SL Indus., Inc.*, 56 F.3d 491, 495 (3d Cir. 1995). "[A]n employer would be entitled to judgment as a matter of law . . . if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant . . . evidence that no discrimination had occurred." *Goodman v. Pennsylvania Turnpike Commission*, 293 F.3d 655, 673 (3d Cir.2002).

In order to satisfy the first prong of the pretext inquiry, a Plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." *Fuentes*, 32 F.3d at 765. Here, Rossi has not

raised any weaknesses in Wyoming Valley's proffered reason that would allow a reasonable factfinder to arrive at the conclusion that Defendant's proffered reason is unworthy of credence. Rossi's termination was based on the disciplinary guidelines which classified Rossi's actions as one of the most serious infractions possible and carried a recommended termination on the first occurrence. Furthermore, only days before Rossi's termination, another security officer, O'Leary, had been fired for the same transgression. Moreover, Rossi testified that he has been warned that failure to turn in a log could lead to termination. As such, Rossi has not created a genuine issue of material fact that would allow a reasonable factfinder to disbelieve Wyoming Valley's proferred reason.

Rossi has focused more of his attention on proving that discrimination was more likely than not a determinative or motivating cause of the adverse employment action. While Rossi has certainly produced evidence that would allow a reasonable factfinder to believe that Whipple harbored deep animus toward Italians, he has not created a genuine issue of material fact that would allow a reasonable factfinder to hold that discrimination was a motivating or determinative factor in his termination. *See Keller v. Oriz Credit Alliance, Inc.*, 130 F.3d 1101, 1112 (3d Cir. 1997) (holding comments could allow factfinder to draw inference of age-based animus, but not determinative cause of subsequent termination). The recommended termination was signed by both Paczkowski and Richards in addition to Whipple. There is no evidence that either of these men knew that Rossi was Italian, nor that they had any prejudice or discriminatory feelings toward Italians, other than the purported "Italian dig" and facial expression made by Richards. Furthermore, the evidence shows that Richard vouched for Rossi's character and professionalism during his subsequent appeal to McDonald. Also, the decision to terminate Plaintiff was upheld following "extensive review

10

and consideration" of Rossi's appeal by McDonald, for whom no evidence of discrimination has been produced either. In addtion, Whipple investigated O'Leary, who is not Italian by all accounts, for the same conduct as Rossi, which led to O'Leary's termination with Wyoming Valley as well.

Thus, the only person in the chain who is tainted by any reliable suggestion of discrimination is Whipple. However, Rossi's termination was recommended by Richards, who outranked Whipple, Paczkowski, and upheld by McDonald, the vice president. Also, Whipple did not single out Rossi for this activity, investigating other non-Italians who engaged in the same behavior and were ultimately terminated. As such, Plaintiff has not created a genuine issue of material fact from which a reasonable factfinder could infer that it discrimination was more likely than not the motivating or determinative factor in Rossi's termination. Therefore, summary judgment will be granted on Counts I and II.

### 2.     Count III

ADEA plaintiffs with indirect evidence of discriminatory intent claiming disparate treatment must proceed under the *McDonnell Douglas* burden-shifting framework. *Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 300 (3d Cir. 2004). Plaintiff may establish his prima facie case by showing: (1) membership in a protected group, i.e. at least forty (40) years of age; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances supporting an inference of discrimination. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002).

Plaintiff has not showed circumstances supporting an inference of discrimination based on age. Both Whipple and Richards are older than Rossi. (Doc. 19 at ¶¶ 9-10). Rossi

has not come forward with any evidence suggesting that he was replaced by security guards who were outside the class protected by the ADEA. O'Leary, who was 29 years old at the time of his termination, was subjected to the same treatment as Plaintiff. The only mention of age on the record is Whipple's comment that Plaintiff was "getting old." This isolated comment was made in a casual setting in response to Rossi's complaints following a busy shift. It is not enough, without more, to create circumstances supporting an inference of discrimination. *See Hoffman v. MCA, Inc.*, 144 F.3d 1117, 1122 (7th Cir. 1998). Therefore, Plaintiff has not met his burden to show a prima facie case, and summary judgment will be granted in favor of Defendant on the ADEA claim.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment will be granted. An appropriate order follows.

| | |
|---|---|
| July 13, 2010 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICK DINO ROSSI, | CIVIL ACTION NO. 3:09-CV-0179 |
| Plaintiff, | |
| v. | (JUDGE CAPUTO) |
| WYOMING VALLEY HEALTH CARE SYSTEM, | |
| Defendant. | |

## ORDER

**NOW**, this  13th  day of July, 2010, **IT IS HEREBY ORDERED** that:

(1)   Defendant's Motion for Summary Judgment (Doc. 16) is **GRANTED.**

(2)   **JUDGMENT IS ENTERED** in favor of Defendant.

(3)    The Clerk of Court shall mark this case as **CLOSED**.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge
